**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| RICHARD G. BEARD and BETH ANN BEARD, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | CIVIL ACTION NO. 3:2006-132 |
| v. ) | |
| ) | JUDGE GIBSON |
| BOROUGH OF DUNCANSVILLE ) | |
| ) | |
| Defendant. ) | |

## <u>MEMORANDUM OPINION and ORDER</u>

**GIBSON, J.**

Perhaps correctly, this Court imagines that few current issues exist that so stir this country's citizenry as the regulatory taking of private property. The anathema felt by certain citizens toward even the abstract concept of a regulatory taking is, perhaps, an inevitable outgrowth of this country's particularized origin and history, born, as we were, from the promise of land available for private possession without molestation. Even in our nascence, though, when land seemed plentiful and the continent's wide territory appeared immeasurable, the early leaders of our country still sought fit to balance the individual's right to sovereignty over her private property with society's possible compelling needs for that private land. The Fifth Amendment to the Constitution states in pertinent part: "nor shall private property be taken for public use, without just compensation." U.S. Const., amend. V. At a later date, the nation also elected to prohibit states from depriving persons of ". . . property, without due process of law . . . ." U.S. Const., amend. XIV.

Today, both of these weighty constitutional principles are invoked in a dispute between

the parties which emerges from Defendant Borough of Duncansville's condemnation of

portions of the private property of Plaintiffs Richard G. and Beth Ann Beard. Upset with this

action, the Beards immediately challenged its legality in the Pennsylvania state court system.

Eventually, a Pennsylvania appellate court vindicated the Beards' position. In addition to their

state court proceedings, the Beards also filed the instant action in this Court, alleging that by

pursuing the condemnation action, the Borough violated their federal constitutional rights and

also their rights as secured by Pennsylvania law.

Now, this Court considers motions for summary judgment filed by each party.[1] At the

summary judgment stage, the Court ultimately determines whether the case should proceed to a

jury trial, or whether one of the parties is entitled to judgment as a matter of law. First, the

Court finds that Plaintiffs' state law claim is legally deficient; consequently, Defendant is

entitled to judgment as a matter of law as to that claim. However, as to Plaintiffs' federal

constitutional claims, the Court finds disputed matters of material fact that must be resolved by

a jury; consequently, Plaintiffs' Motion for Partial Summary Judgment will be **denied**, and

Defendant's Motion for Summary Judgment will be **denied in part and granted in part**.

## I. STATEMENT OF JURISDICTION

This Court has jurisdiction over the claims in this matter pursuant to 28 U.S.C. §§ 1331,

1343, and 1367(a). Pursuant to these statutes, federal district courts possess subject matter

jurisdiction over matters that arise under 42 U.S.C. § 1983, and the Constitution of the United

---

[1] Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 16) and Defendant's Motion for Summary Judgment (Doc. No. 20).

2

States; furthermore, this Court may exercise supplemental jurisdiction over other claims, pursuant to the dictates of 28 U.S.C. § 1367(a).

Venue is proper in this Court pursuant to 28 U.S.C. § 1391(b)(2).

## II. FACTUAL HISTORY[2]

Plaintiffs Richard G. Beard and Beth Ann Beard are the owners of real property located in the Borough of Duncansville, Blair County, Pennsylvania. Plaintiffs' Statement of Material Facts (hereinafter "Plaintiffs' Material Facts"), Doc. No. 17, ¶ 1.  Defendant Borough of Duncansville (hereinafter "Borough") is a local municipality and political subdivision organized and existing pursuant to the laws of the Commonwealth of Pennsylvania. Defendant's Concise Statement of Material Facts (hereinafter "Defendant's Material Facts"), Doc. No. 25, ¶ 1.

The Borough filed a Declaration of Taking on June 9, 2004 condemning a permanent easement and right-of-way over portions of property owned by the Plaintiffs. Plaintiffs' Statement of Material Facts, ¶ 2; Defendant's Statement of Material Facts, ¶ 2. Prior to the filing of the Declaration of Taking, during a public meeting in January 2002, the Borough's Solicitor advised the Borough of the absence of statutory authority for the taking. App. to Plaintiffs' Material Facts, Doc. No. 18,  Ex. C–Dep. of Donald Rabenstein (hereinafter "Rabenstein Dep."), pp. 18-19; Doc. No. 18, Ex. D–Dep. of Barbara Haines (hereinafter "Haines Dep.), pp. 13-14.

---

[2]The following facts are based upon Plaintiffs' Statement of Material Facts (Doc. No. 17) and Defendant's Concise Statement of Material Facts (Doc. No. 25).  The submissions of the parties were used with any additions to a proposed material fact or any additional proposed material fact in the record but not offered. Any proposed facts not contained within the following recitation of facts were found by the Court to remain disputed in the record or to be immaterial.

At a meeting in April, 2004, the Borough enacted a Resolution to condemn a portion of the Beards' property under the Borough Code. App. to Plaintiffs' Material Facts, Ex. F. On July 1, 2004, the Beards filed timely Preliminary Objections to the Declaration of Taking. Plaintiffs' Statement of Material Facts, ¶ 4, Defendant's Statement of Material Facts, ¶ 3. In their Preliminary Objections, the Beards averred that the Borough Code did not authorize taking a portion of their property for private, rather than public purposes. App. to Plaintiffs' Material Facts, Ex. B, ¶¶ 4-5. By Order dated September 30, 2005, the Court of Common Pleas denied and dismissed Plaintiffs' Preliminary Objections. Defendant's Material Facts, ¶ 4.

On May 26, 2006, the Beards appealed the Court of Common Pleas' September 30, 2005 order to the Pennsylvania Commonwealth Court. Defendant's Material Facts, ¶ 5. On March 7, 2007, the Commonwealth Court reversed the trial court's denial of the Beards' Preliminary Objections, determining that the Borough Code did not provide a basis for condemning the Beards' property in the manner sought by the Borough as it was not for a public purpose. App. to Plaintiffs' Material Facts, Ex. G, Opinion of the Commonwealth Court. The Borough then sought review from the Pennsylvania Supreme Court. Defendant's Material Facts, ¶ 7. By Order dated August 17, 2006, the Pennsylvania Supreme Court denied Defendant's request. App. to Plaintiffs' Material Facts, Ex. H.

The Declaration of Taking filed by the Borough came after the Beards' successful defense of an equity action brought by David L. Brenneman t/d/b/a Vineyard Excavating in the Blair County Court of Common Pleas; that court limited the width of the private easement on the Beards' property to twelve (12) feet for use by persons living along the lane. App. to Plaintiffs' Material Facts, Ex. G. The President of the Duncansville Borough Council, Donald

4

Rabenstein, testified in deposition that the Borough was aware of the outcome of this litigation. Rabenstein Dep., p. 20.

On June 8, 2006, the Beards brought the instant action; pursuant to 42 U.S.C. § 1983, the Beards alleged violations of their rights under the Fifth and Fourteenth Amendment, including violations of the Beards' substantive due process rights. Additionally, the Beards raised allegations of a vaguely worded state law claim, which they now state is a claim for wrongful use of civil proceedings. The instant case ran concurrently with Plaintiffs' appeal to the Commonwealth Court, until the Pennsylvania Supreme Court, on August 17, 2006, declined to review that matter.

On November 4, 2008, the Beards filed a Motion for Partial Summary Judgment (Doc. No. 16), a Concise Statement of Material Facts (Doc. No. 17), and a Brief in Support of their Motion for Partial Summary Judgment (Doc. No. 20). Pursuant to this Court's Order of October 7, 2008 (Doc. No. 15), the Borough's Response to Plaintiffs' motion was due on December 1, 2008. No such response was filed by this date. On November 26, 2008, Borough of Duncansville filed a Motion for Summary Judgment. Doc. No. 20. This Motion failed to comply with Local Rule of Court 56.1, as it was not accompanied by a brief or a concise statement of undisputed material facts. Plaintiffs filed a Brief in Opposition to Defendant's Motion for Summary Judgment on December 1, 2008. Doc. No. 21.

On July 27, 2008, this Court entered an Order ordering Defendant to re-file its motion for summary judgment with the appropriate documents and respond to Plaintiffs' motion for partial summary judgment by August 3, 2009. Doc. No. 24. Defendant filed its concise statement of material facts and brief on July 28, 2009. Doc. Nos. 25, 26. Defendant filed a brief in opposition to Plaintiffs' motion for summary judgment on July 30, 2009. Doc. No. 27.

5

Plaintiff filed a brief in reply to Defendant's motion for summary judgment and a response to

Defendant's concise statement of material facts on August 17, 2009. Doc. Nos. 28, 29. On

August 18, 2009, Defendant filed a sur-reply brief in support of its motion for summary

judgment. Doc. No. 30. Both summary judgment motions are now ripe for disposition.

## III. LEGAL STANDARDS

The following standards are applied in ruling upon a motion for summary judgment.

The Third Circuit explained:

> Summary judgment is appropriate only when it is demonstrated
> that there is no genuine issue as to any material fact and the
> moving party is entitled to judgment as a matter of law. *Celotex
> Corp. v. Catrett*, 477 U.S. 317, 322-32, 106 S. Ct. 2548, 2552-
> 57, 91 L. Ed. 2d 265 (1986) ; Fed. R. Civ. P. 56(c). An issue of
> material fact is genuine "if the evidence is such that a reasonable
> jury could return a verdict for the nonmoving party." *Anderson v.
> Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91
> L. Ed. 2d 202 (1986). In deciding a motion for summary
> judgment, all reasonable inferences must be drawn in favor of the
> non-movant. *Oritani [Sav. And Loan Ass'n v. Fidelity and
> Deposit Co.*, 989 F.2d 635, 638].

*Troy Chem. Corp., v. Teamsters Union Local No. 408*, 37 F.3d 123, 125-126 (3d Cir. 1994).

Federal Rule of Civil Procedure 56(c) states that judgment should be granted "if the

pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving

party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).

The Third Circuit explained how to interpret the materiality of a disputed fact:

> As to materiality, the substantive law will identify which facts are
> material. Only disputes over facts that might affect the outcome
> of the suit under the governing law will properly preclude the
> entry of summary judgment. Factual disputes that are irrelevant or
> unnecessary will not be counted. See generally 10A C. Wright, A.
> Miller, & M. Kane, Federal Practice and Procedure § 2725, pp.

6

> 93-95 (1983). This materiality inquiry is independent of and
> separate from the question of the incorporation of the evidentiary
> standard into the summary judgment determination. That is, while
> the materiality determination rests on the substantive law, it is the
> substantive law's identification of which facts are critical and
> which facts are irrelevant that governs. Any proof or evidentiary
> requirements imposed by the substantive law are not germane to
> this inquiry, since materiality is only a criterion for categorizing
> factual disputes in their relation to the legal elements of the claim
> and not a criterion for evaluating the evidentiary underpinnings of
> those disputes.

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510, 91 L. Ed. 2d 202,

211 (1986).

In reviewing a motion for summary judgment, a court must not make credibility

determinations or weigh evidence, as such matters are properly reserved for trial; the Supreme

Court explained:

> Credibility determinations, the weighing of the evidence, and the
> drawing of legitimate inferences from the facts are jury functions,
> not those of a judge, whether he is ruling on a motion for
> summary judgment or for a directed verdict. The evidence of the
> non-movant is to be believed, and all justifiable inferences are to
> be drawn in his favor. *Adickes*, 398 U.S., at 158-159, 90 S.Ct., at
> 1608-1609. Neither do we suggest that the trial courts should act
> other than with caution in granting summary judgment or that the
> trial court may not deny summary judgment in a case where there
> is reason to believe that the better course would be to proceed to a
> full trial. *Kennedy v. Silas Mason Co.*, 334 U.S. 249, 68 S.Ct.
> 1031, 92 L.Ed. 1347 (1948).

*Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255, 106 S.Ct. 2505, 2513 - 2514, 91 L.Ed.2d

202, 216 (1986).

Furthermore, the Supreme Court also explained an opponent's responsibility to raise

genuine doubts as to a material fact:

> When the moving party has carried its burden under Rule 56(c),
> its opponent must do more than simply show that there is some

7

>        metaphysical doubt as to the material facts. In the language of the
>        Rule, the nonmoving party must come forward with "specific
>        facts showing that there is a genuine issue for trial." Fed. Rule
>        Civ. Proc. 56(e) (emphasis added). Where the record taken as a
>        whole could not lead a rational trier of fact to find for the
>        non-moving party, there is no "genuine issue for trial."

*Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 586-587, 106 S. Ct.

1348, 1356, 89 L. Ed. 2d 538, 552 (1986)(internal citations omitted)(footnote omitted).

## IV. DISCUSSION

In its brief, the Borough presents three arguments: 1) that the Beards' claim invoking the

Fourteenth and Fifth Amendments is preempted by a Fifth Amendment just compensation

clause claim; 2) that the Beards already received adequate remedy or just compensation for

their attorney's fees incurred for the condemnation action under Chapter 7 of Pennsylvania's

Eminent Domain Code; and 3) that this Court should abstain from hearing this case under

*Burford v. Sun Oil Company*, 319 U.S. 315, 63 S. Ct. 1098, 87 L. Ed. 1424 (1943). The Beards

argue that they are entitled to partial summary judgment for both their federal and state claims

and their claim for punitive damages.

### A. In this Suit, the Borough is a Proper Municipal Defendant

As part of its first argument, the Borough asserts that due to its status as a municipality

under the laws of Pennsylvania, it is not a "person" that can be sued under 42 U.S.C. § 1983 for

violations of rights protected by other federal laws or by the United States Constitution. Despite

the Borough's contentions, a municipality may be sued under § 1983 if it is alleged to have

caused a constitutional tort through an official policy or governmental custom. *Brennan v.

Norton,* 350 F.3d 399, 427 (3d Cir. 2003) ("A municipality can be sued directly under § 1983 if

it is alleged to have caused a constitutional tort through a policy, ordinance, regulation or

8

officially adopted decision that has been promulgated by the municipality's officers."). Liability may be based on a single decision by an individual with "policy making authority rendering his or her behavior an act of official government policy." *McGreevy v. Stroup,* 413 F.3d 359, 367 (3d Cir. 2005) (citing *Pembaur v. City of Cincinnati,* 475 U.S. 469, 480-81, 106 S. Ct. 1292, 89 L. Ed. 2d 452 (1986)).

The Beards alleged and provided evidence that Defendant, by way of its Council, voted to file a declaration of taking even after being advised that a statutory basis did not exist for the taking. Therefore, the Beards sufficiently alleged a basis for municipal liability; Defendant's argument fails.

## B. Plaintiffs' Constitutional Claim is Ripe

The Borough next argues that the Beards' claim is simply an attempt to obtain "just compensation" for the unlawful taking of their property. The Borough contends that the "most explicit textual source of Constitutional protection which they seek is found in the Fifth Amendment's Just Compensation Clause, even though it is not explicitly stated in the complaint." Def. Brief, p. 4. The Borough then argues that the Fourteenth Amendment due process claim should be preempted by a Fifth Amendment takings clause claim. Defendant further argues that the Beards failed to exhaust their state court remedies with regard to obtaining just compensation, and consequently that their claims are not ripe.

Plaintiffs respond by stating that "the issue [of the taking] has already been decided against the Borough, and that the taking attempted by the Borough, which it knew to be unauthorized before the condemnation action was filed and which was unsuccessful, was not for a public purpose. Consequently, because the Borough's conduct was not authorized by law, the issue of just compensation was not and could not be addressed." Pl. Brief, p. 3. Therefore,

9

Plaintiff argues that the Beards' substantive due process rights under the Fourteenth Amendment are implicated rather than issues of just compensation under the Fifth Amendment as incorporated through the Fourteenth Amendment.

The issue of whether it is proper to allege a claim such as this[3] as a takings clause claim, or alternatively, as a substantive due process claim has not been definitively determined by the Supreme Court. *See Coniston Corp v. Village of Hoffman Estates*, 844 F. 2d 461, 464 (7th Cir. 1988); *see also Theodorou v. Measel*, 53 Fed. Appx. 640, 642 (3d Cir. 2002). The Third Circuit traditionally treats such claims as substantive due process claims; however, it has also analyzed them under both substantive due process and the takings clause. *See County Concrete Corp. v. Twp. of Roxbury*, 442 F.3d 159, 168-169 (3d. Cir 2006); *Theodorou,* 53 Fed. Appx. at 642.

Ripeness, in the context of takings, generally has two requirements under the test established by the Supreme Court:[4] 1) there must be a final decision by the state actor, and 2) a denial of just compensation through all available state procedures. *County Concrete,* 442 F.3d at 164, 168. In an instance of a taking for a public purpose, these two requirements must be met in order for a proper federal claim to be ripe. However, a taking of private property for private use is never appropriate under federal or state law and thus, claims involving private use takings are ripe with or without the plaintiff seeking just compensation in a state forum. *Theodorou,* 53 Fed. Appx. at 643. The same is true of allegations of substantive due process violations, because "[i]n contrast to a Just Compensation Takings Claim . . . [t]he absence of 'just compensation' is not part of a due process . . . injury." *County Concrete,* 442 F.3d at 168-169

---

[3]Meaning a claim that alleges that a state or municipality used a public purpose as a mere pretext to a taking for a private purpose.

[4]Williamson County Reg'l Planning Comm'n v. Hamilton Bank, 473 U.S. 172, 193-97, 105 S. Ct. 3108, 87 L. Ed. 2d 126 (1985).

(citing *Williamson* 473 U.S. at 197).   Because the *Williamson* " 'exhaustion of just compensation procedures' requirement only exists due to the 'special nature of the Just Compensation Clause,' it is inapplicable to" the Beards' substantive due process claims as stated in their complaint. *Id.* at 169; *Theodorou*, 53 Fed. Appx. at 643.

Due to the nature of the taking in the instant case, and the applicable law, it was not error for the Complaint to state a cause of action as a substantive due process claim under the Fourteenth Amendment and 42 U.S.C. § 1983.   Pleading in this manner does not cause Plaintiffs' claims to be subsumed solely into a Fifth Amendment takings clause claim, requiring exhaustion of just compensation remedies in the state forum; regardless, in either legal context, Plaintiffs in their Complaint alleged that this taking was not, in fact, for a public use but instead for an entirely private one; furthermore, Plaintiffs provided specific factual allegations and evidence in support of those allegations.   Therefore, Plaintiffs' substantive due process claim is ripe and will require analysis on the merits.

## C. This Court Will Not Abstain from Adjudicating this Dispute

Additionally, the Borough argues that the Court should abstain from hearing Plaintiffs' claims, because the claims should have been raised in the state court proceedings; furthermore, the Borough also argues that the Beards have already received attorneys' fees as part of the favorable Pennsylvania Commonwealth Court ruling.   The Borough's arguments are not persuasive.

Because it represents an abdication of the Congressionally-conferred duty to adjudicate cases otherwise within the Court's jurisdiction, abstention in general "is an extraordinary and narrow" doctrine justly employed only in "exceptional circumstances." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.,* 460 U.S. 1, 14, 103 S. Ct. 927, 74 L. Ed. 2d 765 (1983); *see*

*also New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 109 S. Ct. 2506, 105 L. Ed. 2d 298 (1989). "However, because federal courts do have discretion in determining whether to grant certain types of relief, abstention is appropriate in a few carefully defined situations." *Gwynedd Props. Inc v. Lower Gwynedd Twp.*, 970 F.2d 1195, 1199 (3d Cir 1992).

The Supreme Court outlined four types of abstention in the following opinions: *Railroad Commission of Texas v. Pullman*, 312 U.S. 496, 500, 61 S. Ct. 643, 85 L. Ed. 971 (1941), *Burford v. Sun Oil Company*, 319 U.S. 315, 63 S.Ct. 1098, 87 L. Ed 1424 (1943), *Colorado River Water Conversation District v. United States*, 424 U.S. 800, 814, 96 S. Ct. 1236, 1244, 47 L. Ed. 2d 483 (1976), and *Younger v. Harris*, 401 U.S. 37, 91 S. Ct. 746, 27 L. Ed. 2d 669 (1971).

Before a federal court may abstain under *Pullman,* three "exceptional" circumstances must be present. "First, there must be 'uncertain issues of state law underlying the federal constitutional claims.'" *Planned Parenthood of Cent. New Jersey v. Farmer,* 220 F.3d 127, 149 (3d Cir. 2000)(quoting *Presbytery of New Jersey of the Orthodox Presbyterian Church v. Whitman,* 99 F.3d 101, 106 (3d Cir.1996)). "Second, the state law issues must be amenable to a state court interpretation which could 'obviate the need to adjudicate or substantially narrow the scope of the federal constitutional claim.'" *Id.* at 149-50 (quoting *Whitman,* 99 F.3d at 106). "Third, it must be that 'an erroneous construction of state law by the federal court would disrupt important state policies.' " *Id.* at 150 (quoting *Whitman,* 99 F.3d at 106). Even if all three circumstances exist, the federal court retains discretion over whether or not to abstain. The court must determine "whether abstention is appropriate by weighing such factors as the availability of an adequate state remedy, the length of time the litigation has been pending, and

12

the impact of delay on the litigants." *Id.* (citing *Artway v. Att'y Gen. of N.J.,* 81 F.3d 1235, 1270 (3d Cir.1996)).

For *Colorado River* abstention to be appropriate, there must be parallel state and federal litigations that are "truly duplicative," and the district court must consider the following: 1) which court first assumed jurisdiction over the relevant res, if any; 2) whether the federal court is inconvenient, 3) whether abstention would aid in avoiding piecemeal litigation; 4) whether state or federal law applies; and 5) whether the state proceedings will sufficiently protect the rights of the federal plaintiffs. *Rycoline Prods., Inc. v. C&W Unlimited,* 109 F.3d 883, 890 (3d Cir. 1997).

*Younger* abstention is appropriate if three requirements are met: 1) there are ongoing state proceedings that are judicial in nature; 2) the state proceedings implicate important state interests; and 3) the state proceedings afford an adequate opportunity to raise the federal claims. *Gwynedd Props., Inc. v. Lower Gwynedd Twp.,* 970 F.2d 1195, 1200 (3d Cir. 1992)(citing *Middlesex County Ethics Comm. v. Garden State Bar Ass'n,* 457 U.S. 423, 432, 102 S.Ct. 2515, 73 L.Ed. 2d 116 (1982)). "Even if this test is met, however, abstention is not appropriate if the plaintiff establishes that 'extraordinary circumstances exist . . . such that deference to the state proceeding will present a significant and immediate potential for irreparable harm to the federal interests asserted.'" *Zahl v. Harper,* 282 F.3d 204, 209 (3d Cir. 2002)(quoting *Schall v. Joyce,* 885 F.2d 101, 106 (3d Cir. 1989)).

In support of its argument, the Borough relies upon *Coles v. City of Philadelphia,* 145 F. Supp.2d 646 (E.D. Pa. 2001), which analyzed *Burford* abstention. "*Burford* abstention is appropriate where a difficult question of state law is presented which involves important state policies or administrative concerns." *Heritage Farms, Inc. v. Solebury Twp.*, 671 F.2d 743, 746

(3d Cir. 1982)(citing *Burford*, 219 U.S. at 332-34). In these situations, "a federal court may abstain to avoid disrupting the efforts of a state to establish a coherent policy with respect to a matter of substantial public concern." *Id.*(citing *Colorado River Conservation Dist. v. United States,* 424 U.S. at 814). While *Burford* abstention originated in cases where the plaintiff was seeking equitable relief, it has been extended to actions seeking declaratory relief and damages; however, in suits for damages, only a stay of the action is authorized, not a remand or dismissal. *Quackenbush v. Allstate Ins. Co.,* 517 U.S. 706, 116 S. Ct. 1712, 135 L. Ed. 2d 1 (1996)

The Borough argues that the reasoning in *Coles* should lead this Court to abstain in the instant case. The plaintiffs in *Coles* alleged that the defendants conspired to cause a depreciation in the property values in their neighborhood and to terrorize, mislead, and threaten the residents of that neighborhood into accepting Philadelphia's buy-out offers for their property. *Coles,* 145 F. Supp. at 649. The plaintiffs sought damages under 42 U.S.C. § 1983 for deprivation of their rights to due process of law, and unjust taking of their property under the Fifth Amendment to the U.S. Constitution, and also for the City's failure to train and follow policy; plaintiffs also raised state law theories of breach of contract and civil conspiracy. *Id.* Plaintiffs filed petitions and obtained injunctions in the Philadelphia County Court of Common Pleas to enjoin the destruction of their homes. *Id. Coles* found that the Pennsylvania Eminent Domain Code fully protected the rights of the property owner and guaranteed the appropriate constitutional safeguards, and therefore it would abstain under *Burford. Id.* at 652. *Coles* quoted Pennsylvania's statute that "it is intended by this act to provide a complete and exclusive procedure and law to govern all condemnations of property for public purposes . . . ." *Id.*

This Court does not find the reasoning in *Coles* to be applicable to the matter *sub judice*, because the Beards properly raise a federal constitutional claim in federal court, and Defendant

14

does not present a compelling case for abstention. In *Hemlock Crossing v. Logan Township*, 2007 WL 1087749 (W.D. Pa. Apr. 9, 2007), this Court addressed an abstention issue under the similar abstention doctrine of *Younger*.[5] The federal claims in *Hemlock Crossing* were brought under the Fair Housing Act, 42 U.S.C. § 1983, and the Thirteenth and Fourteenth Amendments to the United States Constitution. The plaintiff sought injunctive relief as well as compensatory damages, exemplary damages, and costs and fees. *Id.* at * 1. *Hemlock Crossing* determined that the plaintiffs did not attack the constitutionality of Pennsylvania's eminent domain law or the procedures followed by Logan Township, but instead "only attack[ed] the motivation behind Defendants' use of those law." *Id.* at * 4. As a result, *Hemlock Crossing* determined that abstention was inappropriate, as "deciding whether Defendants violated the FHA or Plaintiffs' civil rights does not require review of state law or policy, and there is no important state interest that counsels for abstention." *Id.*; *see also Westrum Land Development Corp. v. Whitpain Twp.*, 2002 WL 32351106, at *3 (E.D. Pa. Oct. 23, 2002)(declining to abstain under *Burford*, stating "Westrum has brought claims under §1983. The essence of plaintiff's claim lies in due-process-the alleged improper invocation of the eminent domain power by the Township-rather than a taking that offends the just compensation clause.").

The Borough makes a second and related argument that the Beards received attorney's fees awarded under Chapter 7 of Pennsylvania's Eminent Domain Code, and that Plaintiff should seek remedy through that Pennsylvania Code. The Beards counter that "[t]he Eminent Domain Code in Pennsylvania makes no provision, other than attorney's fees, for damages for the Beards, and there is no adequate procedure under such law for the Beards to otherwise

---

[5]In *Gwynedd Properties Inc, v. Lower Gwynedd Township*, 970 F.2d 1995, 1202 (3d Cir. 1992), the Third Circuit acknowledged that the determination of what constitutes important state interests and policies are similar under *Burford* and *Younger*.

15

exhaust. Consequently, the Beards must resort, and the law permits them to stand upon, those actions aimed at addressing the Borough's knowingly unlawful conduct which violated their rights . . . ." Pl. Brief, p. 5. In *Hemlock*, the appropriateness of the compensatory scheme under Pennsylvania's Eminent Domain Code was addressed by this Court with respect to an award of damages for federal claims in a state forum. *Hemlock* determined that the state forum was inadequate with regard to the award of damages for federal claims in a condemnation proceeding:

> The [Federal] Court can award § 1983 claimants punitive as well as economic damages. *Brennan v. Norton*, 350 F.3d 399, 428-29 (3d Cir. 2006)(citing *Smith v .Wade*, 461 U.S. 30, 56, 103 S.Ct. 1625, 75 L.Ed. 632 (1983). Pennsylvania's eminent domain law, however, describes a narrower universe of damages, generally limited to actual costs and expenses and occasionally permitting the recovery of attorney's fees. *See e.g.*, 26 Pa.C.S.A. §§ 306(g)(1), 307(a)(l)(I), 308(d). Thus, if Plaintiffs' preliminary objections to the condemnation are sustained out of respect for their federal constitutional and statutory rights, their only recovery could be title and costs. One the other hand, if this Court finds that those same rights have been violated, it may impose on Defendants more significant sanctions. The Court is therefore unable to consider the state condemnation proceeding to be an adequate forum for the damages claims presented in the Amended Complaint.

*Hemlock*, 2007 WL 1087749, *4-5; *see also In re Condemnation by Com. Dept. of Transp.*, 709 A.2d 939, 943-944 (Pa. Commw. Ct 1998)(holding that the condemnees, whose preliminary objections were sustained, were not entitled to recover damages, costs, and expenses under just compensation requirements and were only entitled to costs and expenses actually incurred by them due to the condemnation and provided by Pennsylvania statute.)

A similar rationale to *Hemlock* is appropriate in dealing with the arguments in this case. The Beards' claims will not affect the eminent domain policies of the state of Pennsylvania and

there is no important state interest that will be affected by these claims. The Beards simply raise claims that the Borough improperly invoked its eminent domain power after being advised by its solicitor that it had no grounds to do so, and thus deprived the Beards of their substantive due process rights. This does not require a review or an interference with the policy, decisions, and laws of the state and courts of Pennsylvania. These claims are federal claims being aired in federal court, and were not raised previously in the state forum.

Pennsylvania courts have already sustained the Beards' preliminary objections, effectively ruling that the Beards were entitled to retain their title in the land under Pennsylvania's Borough Code and Pennsylvania's Eminent Domain Code. The action before this Court deals only with the behavior of the Borough in its alleged abuse of its eminent domain power in violation of the Beards' due process rights. As stated above, the limited damages available under Pennsylvania law obviously differ from those that Plaintiffs seek in this Court, wherein they seek compensation for "loss of use and enjoyment of their property, unwanted use of their property by others, the stress and anxiety which they endured in having to direct a significant portion of their income towards improper litigation, the diminishment of their prior investment in attorney's fees and expenses to fight the prior litigation in Blair County against David Brenneman to protect their property interests, and the out-of-pocket losses they suffered in having to take out a loan to pay to continue to fight the baseless condemnation action." Pl. Brief in Opposition, pp. 6-7. Therefore, this Court declines to abstain in the instant action because this Court has an inherent interest in insuring that citizens' federal rights are upheld.

17

## D. Plaintiffs' Substantive Due Process Claim Survives Summary Judgment Stage

"To prevail on a non-legislative substantive due process claim, a plaintiff must establish as a threshold matter that he has a protected property interest to which the Fourteenth Amendment's due process protection applies." *Nicholas v. Pennsylvania State Univ.,* 227 F.3d 133, 139 -140 (3d Cir. 2000)(internal citations omitted). Under Third Circuit precedent, "real property ownership" is a property interest protected by substantive due process. *Id.* at 141. "[I]n a due process challenge to executive action, the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." *County of Sacramento v. Lewis,* 523 U.S. 833, 847 n. 8, 118 S.Ct. 1708, 140 L. Ed. 2d 1043 (1998); *see also United Artists Theatre Dist., Inc. v. Twp. of Warrington,* 316 F.3d 392, 400 (3d Cir. 2003).

The Borough argues that the Beards fail to provide sufficient evidence that Defendant's actions "shock the contemporary conscience" for three reasons: 1) that the improvement of a roadway is not an "unconscionable" use of the property; 2) the state courts differed in their legal analysis of the "taking"; and 3) the Borough did not physically do anything to the property whatsoever. On the basis of these arguments, the Borough claims it is entitled to summary judgment. The Beards also move for summary judgment on this claim, arguing that the deposition testimony of the Borough's President and Secretary, and the minutes of the Board meeting, show that the Borough was advised by counsel that the Borough Code did not authorize the Borough to order the regulatory taking of the Beards' property. The Beards assert that the decision to proceed with the taking, despite the advice of counsel, deprived them of ownership, use, and enjoyment of their property and forced them into the litigation to protect

18

rights that they had previously fought in court to preserve. They argue that this behavior "shocks the conscience" and entitles them to summary judgment.

When addressing whether executive action reaches the level of shocking the conscience, the Third Circuit explained that the outcome of a dispositive motion is dependent "on the context in which the action takes place . . . [and the] particular circumstances that confront those acting on the state's behalf." *Schieber v. City of Philadelphia,* 320 F.3d 409, 417 (3d Cir. 2003). In *Schieber,* the Third Circuit relied on the Supreme Court's decision *County of Sacramento*:

> We have . . . rejected the lowest common denominator of customary tort liability as any mark of sufficiently shocking conduct, and have held that the Constitution does not guarantee due care on the part of state officials; liability for negligently inflicted harm is categorically beneath the threshold of constitutional due process . . . . It is, on the contrary, behavior at the other end of the culpability spectrum that would most probably support a substantive due process claim; conduct intended to injure in some way unjustifiable by any government interest is the sort of official action most likely to rise to the conscience-shocking level . . . .
>
> Whether the point of the conscience shocking is reached when injuries are produced with culpability falling within the middle range, following from something more than negligence but less than intentional conduct, such as recklessness or gross negligence ... is a matter for closer calls.

*Schieber*, 320 F.3d at 417-418 (citing *County of Sacramento,* 523 U.S. at 848-849).

The Third Circuit acknowledged that the "shocks the conscience" standard varies depending on the factual context and the environment in which the decision was made:

> Where a defendant is "confronted with a hyperpressurized environment such as a high-speed chase ... it is usually necessary to show that the officer deliberately harmed the victim." *Estate of Smith v. Marasco (Smith II),* 430 F.3d 140, 153 (3d Cir.2005) (quotations and citations omitted). Where a defendant has "the

19

> luxury of proceeding in a deliberate fashion ... deliberate indifference may be sufficient to shock the conscience." *Id.* (quotations and citations omitted); *see also Nicini,* 212 F.3d at 810.

*Kaucher v. County of Bucks,* 455 F.3d 418, 426 (3d Cir. 2006). In the instant case, the Beards assert that the behavior of the Borough met this standard. The Beards do not make any allegations of evil or malicious intent on behalf of Defendant, but allege that "Defendant was advised in an open public meeting by its solicitor . . . that a statutory basis did not exist for the taking of the Beards' property . . . [i]rrespective of such advice, and despite its knowledge that the Beards had successfully defended prior litigation in the Blair County Court of Common Pleas . . . Defendant filed the Declaration of Taking against the Beards." Complaint, ¶¶ 8-9. Essentially, Plaintiffs argue that the Defendant knew that its actions were not supported by law, and was also aware of prior litigation favorable to the Beards; nonetheless, the Borough did not let such minor details get in the way of their goals. *See* Pl. Brief in Support, p. 4.

The Borough does not present any evidence that the decision to file the declaration of taking was made hastily to protect an important interest of the Borough or its residents. In fact, the Borough states that their intended use of the condemned property was to improve the roadway. The facts of this case suggest that the Borough had the "luxury of proceeding in a deliberate fashion" and, as such, providing evidence of deliberate indifference to the rights of Beards would be the proper approach to evaluating the "shocks the conscience" standard in the instant case. The evidence provided by the Beards tends to show that the President and Secretary of the Borough were aware of the opinion of the Solicitor as to the legality of their intended action. Rabenstein Dep., pp. 18-19; Haines Dep., pp. 13-14. The minutes from the meeting show that the issue of the Borough taking the property had been raised by Joyce

20

Brenneman, the Beards' neighbor. App. to Plaintiffs' Material Facts, Ex. E, Dec. Minutes. The deposition testimony of the Borough President also tends to show that the Borough was aware of the litigation regarding the limitation on the width of an easement between the Beards and their neighbors the Brennemans:

> Q.  In fact, sir the Declaration of Taking was not filed as we have indicated until June of 2004.
>
> A.  Okay.
>
> Q.  But Borough Council was made aware prior to that time the fact that the Beards prevailed in the litigation with Brennemans and that the same was on appeal, isn't that true?
>
> A.  True.

Rabenstein Dep., pp. 18-19. Despite awareness of its lack of solid legal ground, the Borough nonetheless filed a Declaration of Taking.

Plaintiffs produced sufficient evidence for a reasonable jury to conclude that the Defendant Borough acted with deliberate indifference towards the property rights of the Plaintiffs, thus shocking the conscience. Defendant's arguments against the possibility of a shock-the-conscience jury finding are not persuasive: the decision of the Court of Common Pleas, and Defendant's allegations that it did not physically damage the property do not mean that a rational jury could not find in Plaintiffs' favor on this issue. As a result, this cause of action will go forward; however, Plaintiffs' motion for summary judgment will be denied, because whether the actions of the Borough actually meet the "shocks the conscience" test is a question for a jury.

21

**E. Defendant Entitled to Summary Judgment on Plaintiffs' Wrongful Use of Civil Proceedings Claim**

Plaintiffs' claim alleging wrongful use of civil proceedings emerges from the process utilized in initiating the taking; consequently, this Court finds no problem in exercising supplemental jurisdiction over the claims. Defendant does not argue that Plaintiffs were required to raise this claim during the condemnation proceeding.

Under the Dragonetti Act, Pa. Cons. Stat. Ann. §§ 8351-8355, a party may seek redress for harm caused by another's malicious use of civil proceedings. *U.S. Express Lines Ltd. v. Higgins*, 281 F.3d 383, 394 (3d Cir. 2002). The tort of malicious or wrongful use of civil proceedings is to be interpreted and applied against those who use a legal process as a "tactical weapon to coerce a desired result that is not the legitimate object of the process." *Gen. Refractories v. Fireman's Fund Ins.*, 337 F.3d 297 (3d Cir. 2003)(quoting *McGee v. Feege*, 517 Pa. 247, 535 A.2d 1020, 1026 (Pa. 1987)). Five elements are necessary to this claim:

1.  The defendant has initiated, procured, or continued a civil proceeding against the plaintiff;
2.  The proceeding was terminated in plaintiff's favor;
3.  There was an absence of probable cause to bring the proceeding;
4.  The proceeding was brought for an improper purpose;
5.  Plaintiff has suffered damages as a result.

42 Pa. Cons. Stat. Ann. §§ 8351-8354. The party seeking redress under the Act bears a heavy burden. *Higgins*, 281 F.3d at 934.

The Borough raises two issues with regard to this claim: 1) that Plaintiffs fail to state a claim; and 2) that the Borough is immune under the Political Subdivision Tort Claims Act ("PSTCA"). In their complaint, the Beards allege as follows:

> 21. T    he acts and conduct of Defendant alleged above constitute trespass to Plaintiffs' land under the laws of the

22

Commonwealth of Pennsylvania, including but not limited to authorizing, permitting and/or providing opportunity for others living along Vineyard Lane in Duncansville, Blair County, Pennsylvania and/or using the same trespass upon Plaintiffs' property, thereby depriving them of full ownership, use, and enjoyment of their property and causing damage to Plaintiffs' property.

22. At    all times material hereto, Plaintiffs were in possession of such property.

23. The    acts of the Defendant as aforesaid were outrageous in nature, intentional , malicious, wanton, and/or recklessly indifferent to Plaintiffs' rights in their property, including but not limited to full ownership, use, and enjoyment thereof, thereby warranting punitive damages.

Complaint, ¶¶ 21-23. The Beards argues that these allegations properly present a claim for wrongful use of civil proceedings. However, the allegations do not include the five necessary elements as set forth in the Dragonetti Act.    This Court recognizes that the state court proceedings had not been decided in Plaintiffs' favor at the time this action was filed; however, the Beards never amended their Complaint to include all elements of the claim for wrongful use of civil proceedings.

Defendant also asserts that it is entitled to immunity from state law tort and intentional tort claims under the PSTCA. Under the PSTCA, local state governmental bodies, agencies and their employees are generally immune from tort liability for claims under Pennsylvania law. The Act states, in pertinent part:

23

> Except as otherwise provided in this subchapter, no local agency
> shall be liable for any damages on account of any injury to a
> person or property caused by an act of the local agency or an
> employee thereof or any other person.

42 Pa. Cons. Stat. Ann. § 8541. The Act provides that a local government entity[6] and its employees[7] may only be liable to a person due to negligent acts that fall within one of eight enumerated exceptions to immunity. Under 42 U.S.C. §8542, classifications that may impose liability on a local state agency include: "(1)Vehicle Liability; (2) Care, custody or control of personal property; (3)Care, custody or control of real property; (4) Trees, traffic control and street lighting; (5) Utility service facilities; (6) Streets; (7) Sidewalks; and (8) Care, custody and control of animals." 42 Pa. Cons. Stat. Ann. § 8542(b).

The Beards raise two issues in response to Defendant's assertion of immunity: 1) the Borough waived an immunity defense because it failed to assert the defense in its Answer; and 2) the defense of local government immunity does not apply to the wrongful use of civil proceedings claim given the facts averred and demonstrated in the instant case.

The failure by a defendant to raise an affirmative defense in a responsive pleading generally results in the waiver of that defense pursuant to Federal Rule of Civil Procedure 8. However, in *Charpentier v. Godsil*, 937 F.2d 859 (3d Cir. 1991), the Third Circuit enumerated instances where the failure to raise such a defense does not constitute a waiver:

---

[7]"A government unit other than the Commonwealth government. The term includes, but is not limited to, an intermediate unit; municipalities cooperating in the exercise or performance of governmental functions, powers or responsibilities under 53 Pa. Cons. Stat. Ann. Ch. 23 Subch. A (relating to intergovernmental cooperation); and councils of government and other entities created by two or more municipalities under 53 Pa.Cons. Stat. Ann. Ch. 23 Subch. A." 42 Pa. Cons. Stat. Ann. § 8501.

[8]"An employee of a local agency is liable for civil damages on account of any injury to a person or property caused by acts of the employee which are within the scope of his office or duties onlyto the same extent as his employing local agency and subject to the limitations imposed by this subchapter." 42 Pa. Cons. Stat. Ann. § 8545.

> Failure to raise an affirmative defense by responsive pleading or
> appropriate motion, however, does not always result in waiver.
> *See Prinz v. Greate Bay Casino Corp.,* 705 F.2d 692, 694 (3d Cir.
> 1983). Under Fed.R.Civ.P. 15(a), a responsive pleading may be
> amended at any time by leave of court to include an affirmative
> defense, and "leave shall be freely given when justice so
> requires." *See Smallwood v. United Airlines, Inc.,* 661 F.2d 303,
> 306 (4th Cir.1981), *cert. denied,* 456 U.S. 1007, 102 S.Ct. 2299,
> 73 L.Ed.2d 1302 (1982), 469 U.S. 832, 105 S.Ct. 120, 83 L.Ed.2d
> 62 (1984); *Wyshak v. City National Bank,* 607 F.2d 824, 826 (9th
> Cir.1979). Unless the opposing party will be prejudiced, leave to
> amend should generally be allowed. *See Howze v. Jones &
> Laughlin Steel Corp.,* 750 F.2d 1208, 1212 (3d Cir.1984).
> Moreover, under Fed.R.Civ.P. 15(c), issues tried by the express or
> implied consent of the parties are "treated in all respects as if they
> had been raised in the pleadings." *See Prinz v. Greate Bay Casino
> Corp.,* 705 F.2d at 694. It has been held that a "defendant does not
> waive an affirmative defense if '[h]e raised the issue at a
> pragmatically sufficient time, and [the plaintiff] was not
> prejudiced in its ability to respond.' " *Lucas v. United States,* 807
> F.2d 414, 418 (5th Cir.1986), quoting *Allied Chemical Corp. v.
> MacKay,* 695 F.2d 854, 855-56 (5th Cir.1983).

*Charpentier*, 937 F.2d at 863-64. The Beards assert that they have been prejudiced in their

ability to respond to Defendant's assertion of immunity due to the length of time it took

Defendant to make the appropriate filings for the instant motions, and because proposed witness

Barbara Haines died.

In response, the Borough argues that it is entitled to governmental immunity under

Pennsylvania law, which in most instances[8] is an "absolute defense . . . and is not waivable."

*Simmons v. City of Philadelphia*, 947 F.2d 1047, 1086 (3d Cir. 1991)(citing *In re Upset Sale of

Properties (Skibo)*, 522 Pa. 230, 560 A.2d 1388 (1989)). In *Simmons*, the Third Circuit

determined that a state law, holding that this type of immunity is non-waivable, is substantive

---

[9] The Third Circuit held that the PSTCA was not intended to abrogate municipal waiver of immunity ordinances, which are not at issue in the instant case.

for purposes of the *Erie* doctrine. In light of *Simmons*, no waiver occurred, and the Borough properly raised the issue of immunity in its motion.

With respect to the merits of the immunity defense, the Beards assert that the behavior of Defendant constituted willful misconduct, and such behavior falls outside of the protections of the PSTCA.

In instances where an employee of a local state agency is sued, the PSTCA does not provide immunity when it is "judicially determined" that the employee engaged in "a crime, actual fraud, actual malice, or willful misconduct." 42 Pa. Cons. Stat. Ann. § 8550. "For the purposes of the Tort Claims Act, 'willful misconduct' in this context has the same meaning as the term 'intentional tort.'" *Brown v. Muhlenberg Twp.,* 269 F.3d 205, 214 (3d Cir. 2001)(citing *Delate v. Kolle,* 667 A.2d 1218, 1221 (Pa Commw. Ct. 1995) and *Kuzel v. Krause*, 658 A.2d 856, 859 (Pa. Commw. Ct. 1995)). Willfulness will be found where the employee sought to bring about the result that followed his conduct, or where he was aware that the result substantially certain to follow his action, *i.e.* specific intent. *Bright v. Westmoreland County,* 443 F.3d 276, 287 (3d Cir. 2006). "Thus, where an employee acts with a degree of culpability equivalent to "recklessness,' Pennsylvania law nevertheless affords him immunity." *Id.* (citing *Williams v. City of Philadelphia*, 569 A.2d 419, 421-22 (Pa. Commw. Ct. 1995).[9] In the instant case, the Beards sue only a municipality, which is immune from the intentional torts of its employees. *See Talley v. Trautman*, 1997 WL 135705, \*5-6 (E.D. Pa. 1997); *Agresta v. City of Philadelphia*, 649 F.Supp. 117, 123-124 (E.D.Pa. 1988).

---

[10] The Beards rely on two cases in support of their argument, *Phillips v. Heydt*, 197 F. Supp. 2d 207 (E.D. Pa. 2002) and *DiSalvo v. Lower Merion High Sch. Dist.*, 158 F. Supp. 2d 553 (E.D. Pa. 2001). Despite the Beards' contentions otherwise, these cases deal with the immunity of a state official or employee individually and do not deal with the immunity of the municipality itself.

Therefore, in the instant case, the Borough is immune from the attempted wrongful use of civil proceedings claim, because the Borough is protected by statute, and its acts do not fall within the enumerated exceptions to liability. Consequently, even if the Beards had properly stated a claim, Defendant's immunity would have precluded the claim and it will accordingly be dismissed with prejudice.

## F.  Plaintiffs' Claim for Punitive Damages Because of Defendant's Alleged Violations of State Law is Dismissed

Defendant also claims that it is entitled to governmental immunity under Pennsylvania law and Section 1983 for Plaintiffs' punitive damages claims. Plaintiffs appear to only raise the issue of punitive damages under the heading of State Law Claims. If Plaintiffs had tried to request punitive damages under its Section 1983 and federal constitutional claims, the Court notes that it is well-established that punitive damages are not recoverable against a municipality under § 1983. *Hayes v. Erie County Office of Children and Youth*, 497 F. Supp. 2d 684, 703 (W. D. Pa. 2007)(citing *City of Newport v. Fact Concerts, Inc.,* 453 U.S. 247, 266, 101 S. Ct. 2748, 69 L. Ed. 2d 616 (1981)); *McKeown v. Braslawsce,* 2007 WL 2173369, at \*2 (W.D. Pa. July 27, 2007). Therefore, to the extent the Complaint could possibly be interpreted to allege a claim for punitive damages on the § 1983 claims, punitive damages are not available.

Additionally, to the extent that Plaintiffs make a claim for punitive damages under Pennsylvania law, Defendant is immune from such damages pursuant to the PSTCA. In their complaint, Plaintiffs allege that "[t]he acts of the Defendant as aforesaid were outrageous in nature, intentional, malicious, wanton, and/or recklessly indifferent to Plaintiffs' rights in their property, inclu ding but not limited to full ownership, use, and enjoyment thereof, thereby warranting punitive damages." Complaint, ¶ 23.

Defendant is immune from punitive damages claims as local agencies cannot be held liable for punitive damages claims under the PSTCA. *Joseph M. v. Ne. Intermediate Unit 19,* 516 F. Supp. 424, 444 (M.D. Pa. 2007). Therefore, Plaintiffs' request for punitive damages as a function of their state-law claims is dismissed with prejudice.

## IV. CONCLUSION

In conclusion, the Court cannot grant summary judgment as to the Beards' constitutional claim. However, the Court will grant summary judgment in favor of the Borough as to the Complaint's "State Law Claims." The Borough's possible violation of the Beards' constitutional rights is a matter that is appropriate for a jury's assessment. As to the Borough's jurisdictional arguments, this Court hereby confirms that it is a proper forum for parties seeking refuge from violations of federal Constitutional rights. Specifically, it is the realm and responsibility of this Court to provide a forum for the adjudication of the Fourteenth Amendment's due process guarantee. An appropriate order, commensurate with the above opinion, follows.

### ORDER

**AND NOW**, this 21st day of August, 2009, in consideration of the Plaintiffs' Motion for Partial Summary Judgment (Doc. No. 16) and Defendant's Motion for Summary Judgment (Doc. No. 20), and in accordance with the foregoing Memorandum Opinion, **IT IS HEREBY ORDERED THAT** Plaintiffs' Motion for Partial Summary Judgment is **DENIED,** and Defendant's Motion for Summary Judgment is **GRANTED** as to Plaintiffs' Second Cause of Action alleging "State Law Claims", and **DENIED** as to Plaintiffs' First Cause of Action, which alleges a federal constitutional violation.

**BY THE COURT:**

**KIM R. GIBSON,**
**UNITED STATES DISTRICT JUDGE**